**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PX-22-077** |
| | * | |
| **TIMOTHY PROCTOR,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |
| | ******** | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT PROCTOR'S MOTIONS IN LIMINE**
**TO EXCLUDE EXPERT TESTIMONY**

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to Defendant Timothy Proctor's motions *in limine* to exclude expert testimony. ECF Nos. 90 and 91. For the reasons explained below, the motions should be denied.

**BACKGROUND**

I.      **Factual Background**

On July 10, 2021, defendant Timothy Darren Proctor (the "Defendant") was nonresponsive in his car when officers responded to a 911 call that an individual appeared to be asleep or passed out at the wheel of a vehicle parked in front of 6400 Gifford Lane, Temple Hills, Maryland. In the ensuing stop, the Defendant was found to be in possession of a controlled dangerous substance and a firearm.

When officers arrived, the Defendant still appeared to be asleep. Officers Line, Perez, Martinez, and Welcome, began shaking the vehicle and banging on the windows in order to rouse the Defendant. After some time, the Defendant responded and opened the windows. Officers began asking the Defendant questions, and because he appeared confused and potentially under the influence of drugs, alcohol, or some other substance, the officers asked the Defendant to step

out of the vehicle.  Once outside, the Defendant was asked to lift his shirt so that the officers could check for weapons.  When the Defendant lifted his arms, Corporal Line saw a small baggie sticking out of his front right coin pocket.  When alerted to the presence of the baggie, Officer Welcome pulled the bag out and indicated to the other officers that it appeared to be a controlled dangerous substance.  Officer Welcome then placed the Defendant in handcuffs.

When Officer Welcome confirmed that the Defendant had what appeared to be a controlled dangerous substance, Corporal Line searched the vehicle.  Within a few moments of beginning the search, Corporal Line found a firearm in the center console.  The Defendant was arrested and transported to the station, and then to the jail, where law enforcement located an additional twenty-nine baggies, each containing a controlled dangerous substance.[1]

## II.    Procedural Background

On March 3, 2022, the Defendant was charged by indictment with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  ECF No. 1.  On June 29, 2022, the Defendant made his initial appearance.  ECF No. 4.  On August 1, 2022, the Defendant filed a motion for review of the detention order and a detention hearing was set for August 19, 2022.  ECF No. 15.

On August 18, 2022, the Defendant was charged in a superseding indictment that included the original charge for felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and added two additional charges.  ECF No. 16.  The two additional charges included possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  *Id.*  A detention hearing

---

[1] The controlled dangerous substances located on the Defendant, both during his arrest and later at the jail, where drug tested in a lab and were found to be fentanyl.

was held on August 19, 2022, before the Honorable Magistrate Judge Quereshi, who ordered the Defendant detained pending trial.  ECF. No. 21.

On September 12, 2023, the Court issued a Pretrial Scheduling Order setting a trial for December 11, 2023.[2] ECF No. 56.  On November 1, 2023, consistent with the Pretrial Scheduling Order, the Government filed a Motion *in Limine* on November 1, 2023, and on, November 9, 2023, provided a detailed written notice, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), regarding potential expert witnesses that the Government may call during its case in chief at trial. *See* Ex. A (Original Notice Letter).

On November 16, 2023, the Defendant filed a motion to continue trial, with the Government's consent. ECF No. 65.  On November 17, 2023, the Court granted the Defendant's motion to continue trial to January 8, 2024.  ECF No. 66.

On December 15, 2023, a telephone conference was held before the Court, where the parties and Court agreed to continue trial once again.  ECF No. 71.  On December 15, 2023, the Court issued an Amended Pretrial Scheduling Order continuing trial to May 20, 2024.  ECF No. 72.

On April 30, 2024, a telephone conference was held before the Court, where the parties again agreed to continue trial.  ECF No. 82.  On April 30, 2024, the Court issued a Second Amended Pretrial Scheduling Order continuing trial to September 30, 2024.  ECF No. 83.  Based on that Second Amended Scheduling Order, on May 31, 2024, in response to correspondence from counsel for Defendant Proctor and in an attempt to avoid unnecessary litigation, the Government provided an Amended Rule 16 Expert Notice regarding the anticipated testimony of the relevant

---

[2] The Pretrial Scheduling Order originally set trial for December 12, 2023.  However, the Court issued a paperless order on October 24, 2023, correcting the trial date to December 11, 2023.  ECF No. 59.

witnesses.  *See* Ex. B (Amended Notice Letter).   In particular, the Government provided notice regarding the following potential witnesses:

*DEA TFO Fernando Jaramillo*:   Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Fernando Jaramillo is expected to testify as an expert in drug trafficking in this case.   The Government provided the Defendant written notice of TFO Jaramillo's qualifications, including his curriculum vitae describing his eleven years of work with the DEA and his involvement in hundreds of narcotics investigations and arrests.   *See* Ex. B; Ex. C (Jaramillo Notice); Ex. D (Jaramillo CV).   The Government's notice further specified TFO Jaramillo's anticipated testimony in this case, including regarding:

(1) the distribution of fentanyl in the local area (including comparisons as necessary with the distribution of other controlled substances); (2) the methods used by drug traffickers in the distribution of fentanyl and other drugs; and (3) the usage practices and dosages common to fentanyl.

[TFO Jaramillo] is also expected to provide expert testimony relating to narcotics transactions, including purchases of user amounts of fentanyl; whether certain quantities of fentanyl constitute distribution quantities, for later redistribution, and specifically that the quantities and packaging of the fentanyl seized on July 10, 2021, constitute a distribution quantity that is inconsistent with personal use.  In addition, TFO Jaramillo is expected to testify regarding the possession and use of firearms in furtherance of drug trafficking crimes in order to protect drugs and proceeds from other individuals, to send a message to other individuals, and to protect the drug trafficker.  TFO Jaramillo is expected to comment on the proximity in which the drugs and firearm were

found in this case, and how that proximity, the fact that the firearm was loaded, and other such details are consistent with the possession of a firearm in furtherance of a drug trafficking crime.

*See* Ex. B.

 *ATF Special Agent Katherine Benedict*:   Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent ("SA") Katherine M. Benedict is expected to testify as an expert in the interstate nexus of firearms and ammunition.   The Government provided the Defendant written notice of Agent Benedict's qualifications, including her curriculum vitae describing her work as an SA with the ATF since 2001.  *See* Ex. E (Benedict Notice); *see also* Ex. F (Benedict CV).

 As detailed in a Report of Investigation previously provided to the Defendant in discovery, on June 3, 2022, SA Christopher Szakolczai of the ATF conducted an examination of the recovered firearm and ammunition in this matter.  *See* Ex. G (Szakolczai ROI).  Based on his examination, SA Szakolczai concluded that the firearm was not manufactured within Maryland and is a firearm as defined by federal law, and the ammunition was not manufactured within Maryland and is ammunition as defined by federal law.  *Id.*  The report shows that it was prepared and signed by SA Szakolczai.  *Id.*  The report lists two other agents: Kimberly A. Drielak, Resident Agent in Charge, Hyattsville II Field Office, who authorized and signed the report; and Toni M. Crosby, Special Agent in Charge, Baltimore Field Division, who completed a secondary review of the report but did not sign it.  *Id.*  On November 9, 2023, the Government had identified SA Szakolczai as an expert witness expected to testify about firearm identification, origin, marking, and function, including but not limited to the firearm seized in this matter.  *See* Ex. A.

Subsequently, on May 31, 2023, the Government informed the Defendant in a new expert notice that SA Szakolczai was on extended medical leave and would be replaced as a witness by SA Benedict.  *See* Ex. B.  The same day, the Government provided the Defendant with an amended Report of Investigation that was prepared by SA Szakolczai and signed by him on May 31, 2023.  *See* Ex. H. (Amended ROI).  The Amended ROI was authorized and signed by Agent Benedict, and it noted that the firearm was assembled in Springfield, Massachusetts (the frame of the firearm was manufactured in Deep River, Connecticut and then shipped to Massachusetts where it was assembled into a functioning firearm).  *Id.*

In the written notice of SA Benedict's qualifications, the Government stated that SA Benedict would "testify about the examination and analysis of firearms and ammunition, and her examination of: (1) a Smith and Wesson, model SD40 VE .40 caliber, semi-automatic pistol bearing serial number FDB6429; (2) nine rounds of .40 caliber ammunition manufactured by Winchester; and (3) five rounds of .40 caliber ammunition manufactured by Speer."  *See* Ex. E. Further, the Government explained that SA Benedict will testify about the results of the analyses as contained in the Amended ROI, and that her analysis will be "based on her knowledge, training and experience, as well as the firearm and ammunition that SA Benedict observed and examined in this matter."  *Id.*

## III.   Proctor's Motion

The Defendant has filed two separate motions seeking to exclude the expert testimony of two Government witnesses: DEA TFO Jaramillo and ATF SA Benedict.  *See* ECF Nos. 90 and 91.

The Defendant challenges TFO Jaramillo's testimony on four grounds.  *See* ECF 91.  First, the Defendant argues that the Government's notice is deficient.  *Id.*  Second, the Defendant argues that the proffered testimony is not an appropriate subject of expert testimony and should be

subjected to a *Daubert* hearing before admission. *Id.* Third, the Defendant argues that some of the proposed testimony would improperly opine as to the Defendant's mental state. *Id.* Fourth, the Defendant argues that such testimony would be unduly prejudicial and would mislead the jury to convict the Defendant of Count 1 (possession with intent to distribute fentanyl) and Count 3 (possession of a firearm in furtherance of a drug trafficking crime) in the absence of sufficient factual evidence. *Id.*

The Defendant also argues that SA Benedict's testimony should be excluded because she is relying on SA Szakolczai's examination of the firearm and ammunition and her testimony therefore impermissibly relies on testimonial hearsay. *See* ECF No. 90.

## ARGUMENT

The Defendant's motions should be denied as to each potential witness.

## I.   The Testimony of DEA TFO Jaramillo

### A.   The Government's Notice is Sufficient

First, the expert notices for TFO Jaramillo are sufficient and conform with the requirements of Federal Rule of Evidence 702, Federal Rule of Criminal Procedure 16(a)(1)(G), and this Court's Standing Order 2020-01, paragraph 5. The notices provide sufficient basis and methodology for TFO Jaramillo's opinions and establish the relevance of those opinions to the facts in this case.

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if–

> (a) the expert's ... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods;

and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Fourth Circuit has long recognized that the text of Rule 702 "expressly contemplates that an expert may be qualified on the basis of experience." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note). In narcotics cases, the Fourth Circuit has consistently held that testimony on the functions of drug trafficking by government agents with field experience is admissible. *See Wilson*, 484 F.3d at 275–76 (holding that a TFO's experience dealing with coded language in DEA seminars and in interactions with drug traffickers qualified him to testify as an expert based on his "specialized knowledge" of drug traffickers' coded vernacular); *United States v. Campbell*, 851 F. App'x 370, 376 (4th Cir. 2021) (holding that a retired DEA agent's extensive training and experience with narcotics cases qualified him to give expert opinion on "the meaning of coded drug lingo" and "the functioning of drug trafficking operations"). Further, the court has specifically held that "such expert testimony is admissible in the context of drugs and firearms." *United States v. Benn*; 572 F. App'x 167, 185 (4th Cir. 2014). In *Benn*, the expert officer testified about "how much crack cocaine is normally bagged up, how it is cut, the materials used to cut and package it, how much it is usually worth, and how crack houses normally operate." *Id.* at 182. He furthered testified about "why … crack dealers have firearms … the types of firearms he typically sees when crack dealers are trying to protect themselves . . . and the places he typically finds them." *Id.* (citation omitted). The court held that "it was not an abuse of discretion for the district court to allow his testimony to aid the jury in understanding the complex inner workings of drug conspiracies and the connection between guns and drugs." *Id.* at 184.

In considering the testimony by a law enforcement agent in a narcotics case, the advisory committee notes to Rule 702 explain that "the method used by the agent is the *application* of extensive experience to analyze the meaning of the conversations." Fed. R. Evid. 702 (emphasis added). In *United States v. Hopkins*, a police drug investigator's testimony "that the separation of the crack cocaine rocks into separate baggies, as well as the denominations of bills [the defendant] was carrying and his possession of a pager, digital scale, and small caliber weapon all led [the investigator] to conclude that [the defendant] was a drug dealer." 310 F.3d 145, 151 (4th Cir. 2002). The investigator explained that this conclusion was based on his experience and training, and the court held that "[t]his testimony both assisted the jury in determining Hopkins' guilt and was properly based on [the investigator's] observations of the evidence in this case." *Id.*; *see also United States v. Gastiaburo*; 16 F.3d 582, 587 (4th Cir. 1994) (holding that an officer's expert testimony, based on his experience, was admissible when he opined that twenty-one zip-locked baggies of crack cocaine in a hidden compartment of the defendant's car was possessed with the intent to distribute).

The Government's notice provides a sufficient basis for TFO Jaramillo's opinions. As the Government explained in its notice:

> [TFO Jaramillo] has been a member of the Montgomery County Police Department ("MCPD") since 1999. TFO Jaramillo is currently a detective with the MCPD Special Investigations Division, Major Offender / Conspiracy Unit []. TFO Jaramillo is also currently federally deputized as a TFO with the DEA and has been a TFO with DEA since 2013. TFO Jaramillo has conducted hundreds of narcotics investigations involving cocaine, crack cocaine, heroin, fentanyl, methamphetamine, and marijuana. He has performed controlled purchases of

[Controlled Dangerous Substances ("CDS")], and street level surveillance of CDS transactions. He has utilized informants to make controlled narcotics purchases. He has worked in an undercover capacity on several hundred occasions involving narcotics investigations targeting street level, inter-state and international narcotics traffickers. He has conducted and assisted in several federal narcotics conspiracy investigations. He has obtained and executed federal search warrants and assisted in and conducted Title III investigations. He has attended numerous courses covering drug recognition, narcotics trafficking, narcotics interdiction, money laundering, and conspiracy investigations.

*See* Ex. C.

The Government's notice also provides sufficient methodology for TFO Jaramillo's opinions and explains how his testimony will establish the relevance of those opinions to the facts in this case. As the Government explained in its notice:

Through his experience, TFO Jaramillo has become familiar with the organizational structure and activities of CDS trafficking enterprises. He is aware that subjects involved in criminal activity often use vehicles in support of that activity. These vehicles are used to meet sources of supply, distribute narcotics to customers, meet other co-conspirators, and transport narcotics to "stash" locations. The vehicles are also used to conceal firearms, often used to protect the proceeds from the sale of narcotics. In addition, the locations where vehicles are parked overnight by narcotics traffickers can often provide additional locations where traffickers reside or stash narcotics.

TFO Jaramillo has become familiar with the way narcotics traffickers distribute CDS, prepare narcotics for distribution and package narcotics, and with the patterns of activity of narcotics traffickers, and the types and amounts of profits made by traffickers. He has become familiar with how narcotics traffickers obtain narcotics at wholesale prices and re-package narcotics for distribution. He is familiar with the way narcotics traffickers utilize cellular phones to communicate with their sources of supply and [customers]. He also knows that narcotics traffickers often use social media to communicate, obtain and market their narcotics. TFO Jaramillo knows that traffickers use vehicles at their disposal to store and conceal narcotics in hidden compartment or "traps" in the vehicles. He knows that traffickers often register vehicles in the name of coconspirators in order to avoid detection from law enforcement. He knows that traffickers conduct counter-surveillance when obtaining and distributing narcotics in order to identify law enforcement and rival traffickers.

Based on his training, experience, knowledge, and participation in narcotics and firearms investigations, and the training and experience of other agents and detectives with whom he works, he also knows about the distribution of fentanyl in the local area (including comparisons as necessary with the distribution of other controlled substances); the methods used by drug traffickers in the distribution of fentanyl and other drugs; and the usage practices and dosages common to fentanyl. TFO Jaramillo also knows how drug traffickers often use their vehicles to meet with suppliers and coconspirators, sell to drug buyers, travel to stash houses,

transport drugs and drug proceeds, conduct counter-surveillance, and maintain instrumentalities of drug trafficking (including firearms and ammunition).

*Id.*

TFO Jaramillo will apply the knowledge gained through his extensive experience with CDS trafficking to the facts in this case. As the Government explained in its notice:

TFO Jaramillo has reviewed the following materials produced during discovery in this case related to the stop and arrest of Timothy Proctor on July 10, 2021: (1) Report of Investigation at TP_001-002; (2) Firearms Trace Summary at TP_003; (3) Statement of Probably Cause at TP_007-011; (4) Drug Analysis Report at TP_101-106; (5) Body Camera and Cruiser Camera Footage for Officers Line, Martinez, Perez, and Welcome, produced in Discovery 1; (6) Case File from Prince George's County Police Department related to their investigation of this case at the state at TP_107-161; (7) Drug Lab file at TP_162-210; (8) 911 Recording produced in Discovery 2; (9) Incident Details from the Prince George's County Public Safety Communications at TP_213-215; (10) Vehicle Release at TP_222-223; (11) Photos of drugs and packaging seized from Timothy Proctor at TP_224-232; (12) Chain of Custody documentation at TP_233-245; (12) Report of Investigation regarding nexus at TP_259; and (13) Disclosure of Cooperator Statement sent to defense on April 4, 2024.

TFO Jaramillo will testify that the following approximate quantities of controlled dangerous substances and their packaging, which were seized on July 10, 2021, are indicative of drug trafficking: (1) one knotted clear bag containing a white powdery rock-like substance weighing 9.975 grams net weight (before

testing) and 9.937 grams net weight (after testing) that tested positive for Fentanyl; (2) five packets containing a white powdery substance weighing 0.387 grams net weight (before testing) and 0.311 grams net weight (after testing) that tested positive for fentanyl; and twenty-four packets containing a white powdery substance that weighed 3.140 grams gross weight (not tested and weighed with packaging). He will also testify that in 2021, the average price for fentanyl for one user amount was 25-30 dollars and that, at the time, pressed pills were not as common and, instead, powdered fentanyl was more popular. He will also testify that the weight of each of the twenty-nine packets is consistent with that of one dosage. He will also testify that drug traffickers do not always keep large quantities of cash because there is a high risk of being robbed and instead these items can be kept at more secure locations.

TFO Jaramillo will also testify that the following items of evidence, which were seized during the warrant, are also indicative of drug trafficking: (1) Smith and Wesson, model SD40 VE .40 caliber, semi-automatic pistol bearing serial number FDB6429; (2) fourteen rounds of .40 caliber ammunition; (3) drug packaging; and (4) the location of these items when they were seized.

TFO Jaramillo is expected to provide expert testimony relating to narcotics transactions, including purchases of user amounts of fentanyl; whether certain quantities of fentanyl constitute distribution quantities for later redistribution, and specifically that the quantities and packaging of the fentanyl seized on July 10, 2021, constitute distribution quantity that is inconsistent with personal use.

In addition, TFO Jaramillo is expected to testify regarding the possession and use of firearms in furtherance of drug trafficking crimes in order to protect drugs and proceeds from other individuals, to send a message to other individuals, and to protect the drug trafficker.  TFO Jaramillo is expected to comment on the proximity in which the drugs and firearm were found in this case, and how that proximity, the fact that the firearm was loaded, and other such details are consistent with the possession of a firearm in furtherance of a drug trafficking crime.  Further, he is expected to testify that drug traffickers often maintain multiple cell phones, drug proceeds, firearms, and other instrumentalities of drug trafficking in secured locations.

*Id.*

The Defendant fails to specify his objection to the Government's notice under Federal Rule of Criminal Procedure 16(a)(1)(G).  Assuming the Defendant objects to the contents of the notice under 16(a)(1)(G)(iii), the rule requires as follows:

(1) a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C); (2) the bases and reasons for them; (3) the witness's qualifications, including a list of all publications authored in the previous 10 years; and (4) a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

*See* Fed. R. Crim. P. 16(a)(1)(G)(iii).

The Government's notice as to TFO Jaramillo's expert testimony satisfies each element of Rule 16(a)(1)(G)(iii). *See supra* at 10–14.

B.  <u>The Proffered Testimony is an Appropriate Subject of Expert Testimony</u>

TFO Jaramillo's expert opinions are an appropriate subject of expert testimony that will be of use to the jury in understanding the facts of this case.  Absent any authority or comparative analysis, the Defendant contends that TFO Jaramillo's proffered opinions are too general and unreliable to be admissible here.  To support this argument, the Defendant cites a list of TFO Jaramillo's proffered opinions that vary in their subject matter in an attempt to paint a picture of generality in regard to his testimony.  *See* ECF 91 at 3.  However, the Fourth Circuit is clear that evidence should not be examined "in a piecemeal fashion," but should be considered in "cumulative context."  *See United States v. Moody*, 2 F.4th 180, 193 (4th Cir. 2021) (citation omitted).  Further, the Fourth Circuit has held, for example, that "there are many factors that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking activity."  *See United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002).

In *Lomax*, the court found that "[s]ome of these factors may include, but are not limited to: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found."  *Id.*  Specifically, the court in *Lomax* cited the following facts in determining whether the evidence was sufficient to support a conviction under § 924(c): the defendant "had nineteen hits of crack on his person;" the defendant "wouldn't be waving a heavy duty 9 millimeter firearm unless it was for the purpose of protecting something of value;" "the weapon was fully loaded and immediately accessible to him;" and "the firearm was clearly in close proximity to the drugs." *Lomax*, 293 F.3d at 706; *see also United States v. Dennis*, 19 F.4th 656 (4th Cir. 2021) (holding that the jury was entitled to consider the fact a gun was loaded, possessed illegally, found near

heroin, and the heroin had a high street value).  In this case, the firearm located in the center console of the Defendant's vehicle was in close proximity to him, and he had a controlled dangerous substance on his person when he was stopped by law enforcement.  *See supra* at 2.

The evidentiary items in this case should thus be viewed in conjunction with one another as it pertains to Counts 2 (possession of controlled substances with the intent to distribute) and 3 (possession of a firearm in furtherance of a drug trafficking crime).  TFO Jaramillo's testimony on the totality of the evidence is not too general, and his opinions on a variety of factors relevant in this case will aid the jury's understanding of that evidence.  *See supra* at 12-13.

Despite the Defendant's references to a desire for a *Daubert* hearing, he provides no appropriate rationale for such a hearing in this case.  The factors to be considered under *Daubert* are:

> (1) whether the proposed technique used by the expert can be, and has been, tested;
>
> (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; and (4) the degree of the method's or conclusion's acceptance within the relevant scientific community.

*See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 503 U.S. 579, 593–95 (1993)

The Fourth Circuit is clear that "a court is not required to hold a hearing simply because a party has raised a *Daubert* issue." *See United States v. Davis*, 602 F.Supp.2d 658, 663 (D.M.D. Mar. 16, 2009).  Further, "this circuit has taken the position that the *Daubert* court 'was not formulating a rigid test or checklist,' and was 'relying instead on the ability of federal judges to properly determine admissibility.'" *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 785 (4th Cir. 1998) (internal citations omitted).

In *United States v. Beasley*, an investigator with extensive experience and training involving narcotics provided expert testimony about the process of converting powder cocaine into crack cocaine. 495 F.3d 142, 150 (4th Cir. 2007). His experience included: "identifying clandestine drug-making labs; participation as a member of a local narcotics agency in the seizure of cocaine in its various stages on its way to becoming crack cocaine; and witnessing on video the full process of turning powder cocaine into crack cocaine." *Id.* The court found that the investigator's significant experience and training "amply qualified [the investigator] to give testimony on the process of making crack cocaine from cocaine powder" and thus, "the district court did not abuse its discretion in allowing him to testify as an expert, without conducting a *Daubert* hearing. *Id.*

TFO Jaramillo possesses similar qualifications, experience, and training to the expert investigator in *Beasley*. *See supra* at 10.

C. TFO Jaramillo's Opinions Are Proper Under *Diaz*

If offered, TFO Jaramillo's opinions that certain characteristics of the Defendant at the time of his arrest are consistent with drug trafficking and the possession of a firearm in furtherance of drug trafficking does not improperly opine on an ultimate issue that relates to the Defendant's mental state. The lone authority cited by the Defendant in furtherance of this argument, which was under review by the Supreme Court of the United States at the time the Defendant filed his Motion, has since been decided. *See United States v. Diaz*, No. 23-14 (U.S. June 20, 2024). The Court held that "[a]n expert's conclusion that 'most people' in a group have a particular mental state is not an opinion about 'the defendant' and thus does not violate Rule 704(b)." *Id.* at 1. In *Diaz*, a Homeland Security Investigations Special Agent testified that *most* drug couriers are knowingly transporting drugs. *Id.* (emphasis added). The Court opined: "[t]he jury was then left

17

to decide:  Is [the defendant] like the majority of couriers?  Or, is [the defendant] one of the less-numerous-but-still-existent couriers who unwittingly transport drugs?  The ultimate issue of [the defendant's] mental state was left to the jury's judgment."  *Id.* at 9.   Similarly, TFO Jaramillo's opinions proffered in this case would concern narcotics trafficking and traffickers generally and would not opine as to the specific mental state of the Defendant.

      D.  <u>TFO Jaramillo's Testimony Would Not Be Unduly Prejudicial or Mislead the Jury</u>

      TFO Jaramillo's testimony would not be unduly prejudicial, nor would it mislead the jury to convict the Defendant of any charged counts.  Rule 403 provides for the exclusion of relevant evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Evidence is excludable under Rule 403 "only if the evidence is *unfairly* prejudicial and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the evidence."  *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008); *see also United States v. Bajoghli*, 785 F.3d 957, 966 (4th Cir. 2015) ("[U]nfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt *on a ground different from proof specific to the offense charged*." (quotation marks omitted)). Moreover, as the Fourth Circuit has recognized, "Rule 403 exclusion should be invoked rarely, because the general policy of the Federal Rules is that all relevant material should be laid before the jury."  *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (quotation marks omitted); *see also Bajoghli*, 785 F.3d at 966 ("Once it is recognized that evidence is probative of an element of the crime charged, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'" (quoting *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996))).

TFO Jaramillo's proposed testimony is similar to testimony upheld by the Fourth Circuit in the unreported case of *United States v. Pomranky*. 165 F. App'x 259, 2006 WL 237099 at *1 (4th Cir. 2006). In *Pomranky*, the court held that an officer's expert testimony regarding the use of firearms by drug dealers was proper and "was relevant to show that the drugs and firearm were likely connected and that [the defendant] was involved with drug distribution." *See id.* (citing *United States v. Ward*, 171 F.3d 188, 195 (4th Cir.1999) (holding that firearms are well-recognized "tools of the trade" in the illegal drug business)). The court further found that the probative value of the testimony was not outweighed by the danger of unfair prejudice because "[t]he testimony was presented in a neutral, non-inflammatory manner," and in the portion objected to, "[the officer] did not mention [the defendant] and did not offer an opinion as to whether [the defendant's] gun possession was drug-related." *See Pomranky*, 165 F. App'x 259, 2006 WL 237099 at *1. As the Government explained in its notice:

> TFO Jaramillo is expected to comment on the proximity in which the drugs and firearm were found in this case, and how that proximity, the fact that the firearm was loaded, and other such details are *consistent* with the possession of a firearm in furtherance of a drug trafficking crime.

*See* Ex. C (emphasis added).

The Government does not proffer that TFO Jaramillo will offer an opinion that the Defendant possessed the controlled substance found in this case with the intent to distribute it. Nor will he opine that the Defendant possessed the gun found in this case in furtherance of a drug trafficking crime. Rather, he will testify that based on his experience and training involving narcotics investigations, it is his opinion that the evidence in this case is consistent with drug distribution and firearm possession in furtherance of drug distribution. Such testimony would not

supplant the role of the Court or jury, but would aid the jury in determining whether, in fact, the Defendant engaged in the charged criminal acts.

## II.     The Testimony of ATF SA Benedict

The Defendant argues that SA Benedict's testimony should be excluded because she is relying on SA Szakolczai's examination of the firearm and ammunition and her testimony would therefore impermissibly rely on testimonial hearsay. *See* ECF No. 90 at 5–6.  As the Government explained in its expert notice, SA Benedict will "testify about the examination and analysis of firearms and ammunition, and *her examination* of: (1) a Smith and Wesson, model SD40 VE .40 caliber, semi-automatic pistol bearing serial number FDB6429; (2) nine rounds of .40 caliber ammunition manufactured by Winchester; and (3) five rounds of .40 caliber ammunition manufactured by Speer.  *See* Ex. E (emphasis added).  Further, the Government explained in its expert notice that "SA Benedict's analysis is based on her knowledge, training and experience, as well as the firearm and ammunition that SA Benedict *observed and examined* in this matter.[3]  *Id.* (emphasis added).

As the Defendant's Motion noted, an agent may testify as an expert in lieu of the agent who completed the original report if the testifying agent has completed her own independent analysis.  ECF No. 90, at 5; *see also United States v. Summers*, 666 F.3d 192, 202 (4th Cir. 2011).  SA Benedict has completed her own independent analysis of the firearm and ammunition in this case.  The Fourth Circuit has also noted the importance in regard to admissibility that "[t]he expert's opinion will be an original product that can be tested through cross-examination."  *See*

---

[3] Despite acknowledging the Government's assertion in its expert notice that SA Benedict "observed and examined" the "firearm and ammunition" in this case, the Defendant's Motion ultimately argues that SA Benedict "is merely relying on Agent Szakolczai's examination."  *See* ECF No. 90.  That is not the case.  SA Benedict conducted her own examination and analysis and is prepared to testify as such. SA Szakolczai is no longer an intended witness in this case.

*United States v. Johnson*, 587 F.3d 625, 635–37 (4th Cir. 2009) (holding that where "expert witnesses present their own independent judgments, rather than merely transmitting testimonial hearsay, and are then subject to cross-examination, there is no Confrontation Clause violation"). SA Benedict's expert opinion will be an original product, and the Defendant will have the opportunity to cross-examine her at trial.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Defendant's motions *in limine*.


Respectfully submitted,

Erek L. Barron
United States Attorney


_____/s/_____
Joel Crespo
David Salem
Assistant United States Attorneys

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 25, 2024, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the CM/ECF system.


_____/s/_____
Joel Crespo
Assistant United States Attorney