

**U.S. Department of Justice**

United States Attorney
District of Maryland

---

*Joel Crespo*
*Assistant United States Attorney*
*Joel.Crespo@usdoj.gov*

*Mailing Address:*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location:*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4422*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*

September 9, 2025

The Honorable Paula Xinis
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re:    *United States v. Timothy Darren Proctor*
             Criminal No. PX-22-077

Dear Judge Xinis:

This letter brief is submitted in aid of the sentencing hearing scheduled in the above-captioned matter for September 23, 2025, at 10:00 a.m. Defendant Timothy Darren Proctor, Jr. ("Defendant"), was convicted on October 7, 2024, on all counts, including (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), (2) possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841, and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The facts the Government proved at trial are set forth in the Presentence Investigation Report ("PSR"). *See* PSR, at ECF 153, ¶¶ 5-9. The initial calculation of the sentencing guidelines results in an offense level of 24 and a criminal history category of V. However, the Defendant is a Career Offender under U.S.S.G. § 4B1.1(a), having been found guilty of this offense and two prior convictions for controlled substance offenses, resulting in a total offense level of 32 and criminal history category of VI under U.S.S.G. § 4B1.1(b). Further, because the Defendant was also convicted of a violation of 18 U.S.C. § 924(c), and because the Defendant is a Career Offender, the Defendant's guidelines are 360 months to life, under U.S.S.G. § 4B1.1(c). **However, the Government will be making a recommendation for a variant sentence of 324 months.**[1]

---

[1] The sentence imposed in the instant conviction, should be imposed consecutive to any term imposed as a result of the Defendant's revocation of supervised release. As noted in U.S.S.G. § 7B1.3(f), "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."

## Procedural Background

On March 3, 2022, the Defendant was charged by indictment with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  ECF No. 1.  On June 29, 2022, an initial appearance and arraignment were held before the Honorable Ajmel A. Quereshi, United States Magistrate Judge.  The Defendant consented to detention without prejudice.  On August 1, 2022, the Defendant filed a Motion for Review of the Detention Order which was set to be heard on August 19, 2022.  ECF No. 15.

On August 18, 2022, the Defendant was charged in a superseding indictment that included the original charge for felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and added two additional charges.  ECF No. 16.  The two additional charges included possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  *Id.*

On August 19, 2022, a detention hearing was held before the Honorable Ajmel A. Quereshi, United States Magistrate Judge, who ordered the Defendant detained pending trial.  ECF. No. 21.

On September 23, 2022, the Defendant filed a motion to suppress evidence.  ECF No. 24.  On March 9, 2023, a hearing on the motion to suppress evidence was held before the Honorable Paula Xinis, United States District Judge.  ECF No. 36.  On July 11, 2023, the Court denied the Defendant's motion.  ECF No. 46.

A jury trial was held before the Honorable Paula Xinis, United States District Judge, beginning on September 30, 2024.  ECF No. 127.  On October 7, 2024, the Defendant was found guilty by jury trial as to all counts in the Superseding Indictment.  ECF No. 138.

## Factual Background[2]

On July 10, 2021, at approximately 1:30 p.m., officers from the Prince George's County Police Department ("PGPD") responded to an address in Temple Hills, Maryland, due to a suspicious occupied vehicle that was parked in the area.  Upon arrival, officers observed a grey Jeep Cherokee bearing a Maryland temporary registration plate with a person that was unresponsive in the driver's seat.  Officers approached the vehicle to check on the driver, who was later identified as Timothy Darren Proctor, Jr., the Defendant, who was unresponsive behind the steering wheel, with the vehicle on and in drive, with the windows up, and the doors locked.  Officers banged on the windows and shook the vehicle to wake up the Defendant.  The vehicle was registered in the Defendant's name.

The Defendant eventually woke up and rolled down the windows. After answering a few questions, The Defendant was asked to exit the vehicle. After the Defendant exited the vehicle, one of the officers asked the Defendant to lift up his shirt around the waistband to check for weapons.  At that moment, another officer noticed that the Defendant had a plastic baggie sticking out of his front right coin pocket.  PGPD officers retrieved the plastic baggie hanging from the Defendant's right front coin pocket which contained approximately 10 grams of fentanyl.  The Defendant was then placed under arrest.  As a result of the arrest, PGPD officers began conducting the impound

---

[2] *See* PSR, ¶¶ 5-9.

inventory of the items in the Jeep Cherokee and located a Smith & Wesson 40mm caliber semi-automatic handgun bearing serial number FDB6429 inside the center console of the Jeep Cherokee. The firearm was loaded with thirteen (13) 40mm caliber rounds in a magazine and one (1) in the chamber for a total of fourteen (14) rounds.

After his arrest, the Defendant was transported to the Upper Marlboro Department of Correction ("MDC") for processing. While the Defendant was being processed at MDC, a corrections officer found a clear zipped bag containing twenty-nine (29) small clear bags on the Defendant person. The twenty-nine (29) baggies contained approximately 3.5 grams of fentanyl. In total, the Defendant was in possession of approximately 13.5 grams of fentanyl. The Defendant knowingly possessed the substance containing a detectable amount of fentanyl on July 10, 2021, with the intent to distribute it.

The Defendant also knowingly possessed the loaded Smith & Wesson 40mm caliber semiautomatic handgun on July 10, 2021, in furtherance of his drug trafficking. At the time the Defendant possessed the Smith & Wesson 40mm caliber semi-automatic handgun, the Defendant had been convicted, and knew he had been convicted, of an offense carrying a maximum penalty in excess of one year imprisonment and had, in fact, served more than one year of imprisonment for at least one of his past convictions. The Smith & Wesson 30mm caliber semi-automatic handgun and the fourteen (14) rounds of 40mm caliber ammunition were manufactured outside of Maryland and traveled in interstate and/or foreign commerce before the Defendant possessed them in Maryland on July 10, 2021.

## Sentencing Guidelines

The Government agrees with the final advisory U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") calculation made by Probation (360 months to life). PSR ¶ 33. The Government does not agree, however, that the offense level prior to the application of U.S.S.G. § 4B1.1(c)(3) is an offense level of 24. Rather, the offense level would be 32, pursuant to U.S.S.G. § 4B1.1(b)(3), since the controlling count has a statutory maximum of 20 years. The Government's calculation of the Guidelines is as follows:

- **First,** the initial applicable base offense level is **24**, pursuant to U.S.S.G. § 2K2.1(a)(2), because the Defendant committed the instant offense subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled substance offense. Specifically, the Defendant was previously convicted of Distribution of Controlled Substances in the United States District Court in the Eastern District of Virginia (Docket No.: 1:19CR206-001) and Possession with Intent to Distribute a Controlled Substance in Washington, DC (Docket No.: 2011 CF2 003591) ("Prior Convictions"). The guideline for a violation of 18 U.S.C. § 924(c) is U.S.S.G. § 2K2.4. The guideline sentence is the term of imprisonment required by statute, the minimum of which is a mandatory sentence of 5 years (60 months) imprisonment, consecutive to any other count. The Defendant's criminal history category is V. The resulting guidelines range is 152-175 months (12 years and 8 months to 14 years and 7 months).

- **Next,** because the Defendant is a Career Offender pursuant to U.S.S.G. § 4Bl.l(a), resulting in an increase in the Defendant's criminal history category to category VI and an offense level of 32 under U.S.S.G. § 4Bl.l(b). The guidelines range therefore would be 210-262

months of imprisonment plus the statutory minimum of 60 months on the 18 U.S.C. § 924(c) conviction, resulting in a range of 270-322 months (22 years and 6 months to 26 years and 10 months).

- **Last,** because the Defendant is both a Career Offender and was convicted of a violation of 18 U.S.C. § 924(c), U.S.S.G. § 4B1.1(c)(3) increases the Defendant's guidelines to 360 months to life (30 years to life).

Accordingly, the Defendant's Guidelines imprisonment range would be 360 months to life in prison.

### Section 3553(a) Factors

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the range, it must consider the 18 U.S.C. § 3553(a) factors before imposing the sentence. *Id.* at 49–50.

**I.     A 324-month Term of Imprisonment is Appropriate Under § 3553(a)**

The relevant § 3553(a) factors support the substantial sentence recommended by the Government. A sentence of 324 months is also sufficient, but not greater than necessary, for this conduct and will result in the Defendant's incapacitation for a significant period. This sentence should be imposed consecutive to any sentence the Defendant received as a result of the revocation of supervised release for the same conduct. *See* U.S.S.G. § 7B1.3(f).

  **a.     § 3553(a)(1):  Nature and Circumstances of the Offense**

The nature and circumstances of the offense justify a variant 324-month sentence. The Defendant was arrested on July 10, 2021, and found to be in possession of 13.5 grams of fentanyl and a firearm loaded with thirteen (13) 40mm caliber rounds in a magazine and one (1) in the chamber for a total of fourteen (14) rounds.

Congress has amended 18 U.S.C. § 924 many times, but most importantly as it relates to the case at issue, to criminalize drug trafficking and the combined use of a weapon. Section 924(c) was enacted as an amendment in 1986 by the Firearms Owners' Protection Act (FOPA). The amendment mandated that any person who uses or carries a firearm during and in relation to a "drug trafficking offense" shall be subject to a mandatory prison term. *See* Pub. L. 99-308, § 104, 100 Stat. 457 (1986). The purpose of the amendment was to "[p]rovide[ ] an important new weapon against narcotics traffickers." See H. Rep. No. 99-495 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1328.

Even after the Supreme Court of the United States limited Section 924(c) by finding that in order to obtain a conviction under the "uses" prong of the then-version of Section 924(c), it was necessary to establish that the defendant "actively employed" the firearm in some way in order to facilitate the predicate offense, Congress again responded. In November 1998, Congress responded to the Bailey decision by enacting Pub. L. 105-386, commonly referred to as the "Bailey Fix Act."

There, Congress created a new offense for possession of a firearm in furtherance of the predicate crime of violence or drug trafficking crime. The legislative history of the 1998 amendment is contained in the Report of the House Judiciary Committee, H.R. Rep. No. 105- 344 (1997). According to the Report, "the word 'possession' has a broader meaning than either 'uses' or 'carries,' thus reversing the restrictive effect of the Bailey decision." In addition, the floor statements of the sponsors of the House and Senate versions of the legislation illuminate both the purpose of the amendment and the "in furtherance" requirement. Senator DeWine explained that, as amended, the Act "is meant to embrace not only instances of brandishing, firing, or displaying a firearm during a crime of violence or drug trafficking offense, but also . . . situations where a defendant kept a firearm available to provide security for the transaction, its fruit or proceeds, or was otherwise emboldened by its presence in the commission of the offense." 144 Cong. Rec. S12671, (daily ed. Oct. 16, 1998) (statement of Sen. Dewine).

Here, the Defendant was found unresponsive in his vehicle by police and with the vehicle on and in drive. When he was asked to step out of the vehicle, law enforcement could plainly see a baggie sticking out of his coin pocket. When it was determined that the baggie had a controlled dangerous substance, the vehicle was searched. During the search, law enforcement located a firearm in the center console. The Defendant was dealing drugs, specifically, fentanyl, which is extremely addictive and dangerous. This is the exact situation that Senator DeWine, a co-sponsor of the amendment, noted that the amendment was supposed to address, an individual that "**kept a firearm available to provide security for the transaction, its fruits or proceeds, or was otherwise emboldened by its presence in the commission of that offense**." And the Defendant did so while dealing fentanyl, a dangerous drug that in 2021 led to 106,699 drug overdose deaths, the same year the offense happened.[3] Given fentanyl's danger, Congress has also recently enacted the HALT Fentanyl Act, which re-classified fentanyl-related substances as schedule I controlled substances.

### b. § 3553(a)(1)(A): The History and Characteristics of the Defendant

The Defendant has a serious criminal record, but specifically, he has two prior controlled substance offenses that have resulted in him being classified as a Career Offender. *See* PSR, §§ 35-50.

The Defendant was first arrested on June 29, 2001, at age 17, and convicted of Involuntary Manslaughter While Armed, in Washington, DC. He was found guilty on March 20, 2003, and sentenced to 6 years' incarceration. The Defendant was released on February 8, 2007, to supervised release, after having served over 5 ½ years. The Defendant's supervised release expired on February 7, 2012, **but despite that, the Defendant was convicted of another distribution charge before the end of the supervised release period**.

On February 25, 2011, **while still on supervised release**, the Defendant was arrested and charged with Possession With Intent to Distribute a Controlled Substance and Unlawful Possession of Liquid PCP in Washington, DC. The Defendant was found guilty on December 14, 2011, and sentenced to 20 months incarceration and 5 years supervised release. The Defendant was released

---

[3] Merianne Rose Spencer, Arialdi M. Miniño, and Margaret Warner, "Drug Overdose Deaths in the United States, 2001–2021," NCHS Data Brief No, 457, Centers for Disease Control and Prevention National Center for Health Statistics, U.S. Department of Health and Human Services, December 2022, https://www.cdc.gov/nchs/data/databriefs/db457.pdf

on June 7, 2013.

On May 10, 2019, the Defendant was arrested and charged with Conspiracy to Distribute Controlled Substances and three other counts of Distribution of Controlled Substances in the United States District Court for the Eastern District of Virginia (Case No: 1:19CR206-001). The Defendant pled guilty on February 28, 2020, and sentenced on July 14, 2020, to 27 months incarceration and 3 years of supervised release. The Defendant was released on July 20, 2020.

Less than a year later, **while still on supervised release**, the Defendant committed the instant offense on July 10, 2021. The Eastern District of Virginia then revoked the Defendant's Supervised Release sentenced him to 24 months incarceration.

While serving his revocation incarceration sentence, the Defendant was charged in the District of Maryland on March 3, 2022, with a violation of 18 U.S.C. § 922(g).

The Defendant's prior convictions suggest that the Defendant refuses to abide by the law and that none of his prior arrests and convictions have convinced him to change his behavior—the Defendant is a repeat offender, and Congress has required the United States Sentencing Commission to promulgate Career Offender guidelines that "specify a sentence to a term of imprisonment at or near the maximum term authorized" to address this type of offender. The Defendant's criminal history began at the age of 17. And even though there is a gap of convictions between his release in June 2013 and his next conviction, in May 2019, the time in between is not without its law enforcement contact. On October 7, 2014, the Defendant was arrested for CDS Possession (Not Marijuana) and on November 26, 2017, he was arrested for Attempted Second Degree Murder amongst other firearms and assault charges. Separately, there are two additional arrests for possession with intent to distribute a controlled substance in Washington, DC, one on September 2, 2010, and August 2, 2011. The history and characteristics of the Defendant are that he is a repeat offender, the very problem the Career Offender guideline is aimed to address. The Defendant has not changed his behavior despite three prior convictions and multiple arrests, the Court should sentence him to the variant sentence requested by the Government, 324 months.

    c.    **§ 3553(a)(2)(A): The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

The sentence imposed needs to send a strong message to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The Defendant has three prior convictions and was on Supervised Release when he committed the instant offense on July 10, 2021. A 324-month sentence will reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Further, the sentence imposed in the instant conviction, should be imposed consecutive to any term imposed as a result of the Defendant's revocation of supervised release.[4] As noted in U.S.S.G. § 7B1.3(f), "[a]ny term of imprisonment imposed upon the revocation of probation or supervised

---

[4] The Defendant's Supervised Release was revoked and received a 24-month incarceration sentence as a result of this offense because the Defendant was on supervised release from the conviction for Distribution of Controlled Substances in the United States District Court in the Eastern District of Virginia (Docket No.: 1:19CR206-001).

release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."

    **d.**    **§ 3553(a)(2)(B) and (C): The Need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant**

The Court should send a strong message that these crimes will be punished heavily to prevent other repeat offenders from committing crimes. A sentence of 324 months will afford adequate deterrence by dissuading other repeat offenders from continuing to re-offend.

Because of the Defendant's likelihood to recidivate, the Court should impose a sentence that will protect residents in the District of Maryland from the Defendant's drug dealing and the danger, violence and other tragic outcomes that come with it. The Defendant has shown, time and time again, that he is a danger to the community, despite past sentences of incarceration and supervised release and should be deterred through incarceration.

## Conclusion

For the foregoing reasons, the Government respectfully requests the Court impose a sentence of 324 months.

                                                                                 Very truly yours,

                                                                                 Kelly O. Hayes
                                                                                 United States Attorney

                                                                                 _____/s/_____
                                                                                 Joel Crespo
                                                                                 Assistant United States Attorney